UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-mj-03347-Reid

UNITED STATES OF AMERICA

v.

WILLIAMSON DOSSOUS,

Defendant.
_____/

FILED BY OG D.C.

Jul 14, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:    /s/ Sterling M. Paulson
Sterling M. Paulson
Assistant United States Attorney
Court ID No. A5503032
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
Tel.: 305-961-9302
Email: sterling.paulson@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>WILLIAMSON DOSSOUS,<br><br>Defendant. | )<br>)<br>) Case No. 25-mj-03347-Reid<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 16, 2025,__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Smuggling of Goods from the United States |
| 18 U.S.C. § 922(e) | Delivery of Firearms and Ammunition to Common Carrier Without Notice |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Miguel A. Presno, Special Agent HSI
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Face Time__

Date: __July 14, 2025__

_____
Judge's signature

City and state: __Miami, Florida__        Honorable Lisette M. Reid, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Miguel A. Presno, Special Agent with Homeland Security Investigations ("HSI"), having been duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1. I am presently employed as a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations in Miami, Florida, and have been so employed for approximately 22 months. I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center. Prior to that, I was employed with the Hollywood Police Department for approximately two years as a police officer. I obtained a Bachelor of Arts Degree in Criminology from the University of Florida. I am currently assigned to the Port of Miami – Border Enforcement Security Taskforce. I have received training and been assigned to conduct investigations of criminal violations of the United States Code, as enumerated in Titles 18, 19, 21, 22, and 31, along with various other federal statutes.

2. This Affidavit is submitted in support of a criminal complaint charging **Williamson Dossous ("DOSSOUS")** with knowingly exporting, or attempting to export from the United States, any merchandise contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554, and with knowingly delivering to any common or contract carrier for transportation or shipment in interstate or foreign commerce a firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped, in violation of Title 18, United States Code, Section 922(e) (the "TARGET OFFENSES").

1

3. The facts in this Affidavit are based on my direct participation in this investigation, discussions with other law enforcement personnel involved in this investigation, and/or review of information, suspect and witness interviews, investigative reports and documentation that I have received in my official capacity from other law enforcement personnel, grand jury subpoena records and firearm transaction records from Federal Firearm Licensees (FFLs).

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not contain all the facts known to me or law enforcement regarding this investigation.

## PROBABLE CAUSE

5. On or about January 16, 2025, United States Customs and Border Protection ("CBP") conducted an outbound inspection of a cargo container awaiting departure from the Port of Miami. The container was scheduled to depart on a marine vessel destined for Cap-Haitien, Haiti.

6. During the inspection of the cargo, CBP utilized an x-ray scanning system and discovered anomalies within bundles of apparent clothing inside the cargo container.

7. Further inspection of the contents of the cargo container revealed that multiple firearms, ammunition, and firearm accessories had been wrapped and concealed in aluminum foil among the clothing, including:

- One SWD Ml 1/9 pistol, bearing serial number 89-0004814;
- One Glock 43X pistol, bearing serial number BMYC542;
- One Taurus G3C pistol, bearing serial number AGC087530;
- One Stoeger STR-9C pistol, bearing serial number T6429-23U00398;
- One Glock 21 pistol, bearing serial number AKHC521 GA;

- One Stoeger STR-9C pistol, bearing serial number T6429-23S09911;
- One Glock 19 pistol, bearing serial number BGPR445;
- One Beretta APX pistol, bearing serial number AXC063517;
- One Taurus G2C pistol, bearing serial number AGD135013;
- One Ruger LCP pistol, bearing serial number 372591824;
- Approximately eighteen pistol magazines;
- Approximately 900 rounds of .223 caliber ammunition;
- Approximately 646 rounds of 9mm caliber ammunition;
- Approximately 642 rounds of 7.62 caliber ammunition;
- Approximately 100 rounds of 5.56 caliber ammunition; and
- One barrel extender.

8. The shipping company for the cargo container, Company 1, provided the shipping documents for the container to law enforcement. **DOSSOUS** was listed as the shipper of the container on the shipping document. The contents of the shipment were described on the shipping document as "(l LT) STC: I LOT OF USED HOUSEHOLD.GOODS & PERSONAL EFFECTS." The shipping documents did not include any declaration or disclosure that the cargo included firearms or ammunition. Based on my training and experience, the firearms and ammunition discovered in the January 16, 2025, shipment were packed and wrapped up in a manner consistent with someone trying to disguise and/or conceal the presence of the items within the shipment. Moreover, I also know from my training and experience that perpetrators of the TARGET OFFENSES will often list false information on shipping paperwork regarding the contents of shipments containing illegal items in order to conceal the true contents of the shipment and/or to avoid inspection or scrutiny of a given shipment. Thus, based on my training and experience, the

3

fact that the seized shipment's paperwork in this case indicated that the shipment only contained household goods and personal effects, without mention of the firearms or ammunition, is consistent with an attempt to conceal the true contents of the shipment in furtherance of the TARGET OFFENSES.

9. Several of the firearms in the shipment described above were purchased in the several weeks and months prior to the shipment. Many of these firearms were also purchased by individuals who had personal connections to **DOSSOUS**. However, none of the firearms were purchased by **DOSSOUS**, himself. Based on my training and experience, individuals engaged in the TARGET OFFENSES will often attempt to conceal their connection to firearms by enlisting other to purchase firearms on their behalf, thereby concealing their own identity and distancing themselves from any paper trail should the firearms be seized by law enforcement.

10. Two of the firearms from the shipment were purchased by the same purchaser, L.L. One firearm was purchased 37 days prior to the seizure, and another firearm was purchased 51 days prior to the seizure. On March 12, 2025, law enforcement conducted an interview of L.L. During the interview, L.L. confirmed that she purchased both pistols and claimed that they were for protection for her and her son. L.L. advised that her friend, **DOSSOUS**, had driven her to both gun stores to purchase the firearms. L.L. denied purchasing the firearms for **DOSSOUS**, but later admitted that on the same day the later firearm was purchased (December 10, 2024), L.L. had left the firearms in **DOSSOUS**'s vehicle. L.L. claimed that she had left the firearms in **DOSSOUS**'s vehicle because she had to rush home for a personal emergency. L.L. stated that she expected **DOSSOUS** to return the firearms, but that he never did. L.L. stated that **DOSSOUS** had left town for work and had since ignored her phone calls. L.L. described **DOSSOUS** as a Haitian black male, approximately 5'6 to 5'7, heavy set and balding, with a low-cut hairstyle. Based on L.L.'s

4

statements, there is reason to believe that **DOSSOUS** was the last known person in possession of the two firearms purchased by L.L. prior to their January 16, 2025, seizure by CBP.

11. Two of the firearms were purchased by **DOSSOUS**'s son, W.D., approximately 122 days prior to the seizure.

12. One of the firearms was purchased by M.T., who is a patient at a chiropractic center for which **DOSSOUS** is listed as the corporate secretary. M.T. purchased this firearm 50 days prior the seizure. In an interview with law enforcement, M.T. stated that she was not aware how **DOSSOUS** had obtained the firearm that she purchased, but that she had learned from another individual that the gun had been seized at the border by law enforcement when **DOSSOUS** attempted to send it to Haiti.

13. Another firearm was purchased by A.G. approximately 140 days prior to the seizure. In an interview with law enforcement, A.G. claimed that the firearm was in the back of a car that he was traveling in at the time of a December 2024 traffic accident. He claimed that he had not seen the gun since the accident. However, he acknowledged that he knew **DOSSOUS** as one of several people who shipped items to Haiti. Flight records otherwise reflect that **DOSSOUS** and A.G. traveled together from Fort Lauderdale, Florida, to Cap-Haitien, Haiti, in July 2023.

14. On June 13, 2025, law enforcement conducted an interview of **DOSSOUS**. **DOSSOUS** acknowledged that he has been shipping cargo containers to Haiti for over twenty years and estimated that he ships approximately 2-3 containers per year. **DOSSOUS** claimed that he was not aware that any of his recent shipments had contained firearms or ammunition.

15. On or about June 20, 2025, a confidential source ("CS") provided a recorded call to law enforcement in which the CS and **DOSSOUS** discussed law enforcement's attempts to obtain **DOSSOUS**'s DNA after questioning him about the January 2025 shipment seizure. During

the course of this conversation, **DOSSOUS** stated, "they going to get my fingerprints on them [guns] because I touched them…because I was there when he was doing the stuff…I know about the guns, I touched the guns." Law enforcement recognized the voice in the recording as **DOSSOUS**'s voice. The phone number used by the individual identified as **DOSSOUS** on this recorded conversation is a phone number that is registered in the name of **DOSSOUS**'s known girlfriend and has a billing address that matches to **DOSSOUS**'s residence.

16. An exporter seeking to ship firearms and ammunition from the United States is generally required to obtain an export license for each shipment.

17. Law enforcement conducted a database check and confirmed that **DOSSOUS** did not possess an export license for the firearms or ammunition in the January 16, 2025, shipment.

18. On or about July 13, 2025, law enforcement arrested **DOSSOUS** prior to his boarding of an outbound flight from Miami to Haiti. During the administrative and medical clearance process prior to **DOSSOUS**'s booking, law enforcement was discussing next steps in a separate smuggling investigation. **DOSSOUS** appeared to overhear some part of this conversation and spontaneously stated to law enforcement: "I know my prints are going to be on the guns because I touched them. I'm not going to lie about that."

## CONCLUSION

19. Based on the information provided above, I respectfully submit there is probable cause to believe that **DOSSOUS** did knowingly export, or attempt to export from the United States, any merchandise contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Section 554, and did knowingly deliver to any common or contract carrier for transportation or shipment in interstate or foreign commerce a firearm or ammunition without

written notice to the carrier that such firearm or ammunition is being transported or shipped, in violation of Title 18, United States Code, Section 922(e).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
MIGUEL A. PRESNO
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this __14th__ day of July 2025.

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

7